**John M. HODGENS,**

**v.**

**GENERAL DYNAMICS CORPORATION.**

**Civil Action No. 96–117–T.**

United States District Court,
D. Rhode Island.

May 6, 1997.

Patricia E. Andrews, Manuel Andrews, Providence, RI, for plaintiff.

Neal J. McNamara, MacAdams & Wieck, Inc., Providence, RI, for defendant.

### MEMORANDUM AND ORDER

TORRES, District Judge.

John M. Hodgens has sued his former employer, General Dynamics Corp., claiming, among other things, employment discrimination based upon his age and alleged disability as well as violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.*

The case is presently before the Court for consideration of General Dynamics' motion for summary judgment. Because I find no basis for any of Hodgens' claims, the motion for summary judgment is granted.

### Background

The material facts are undisputed. Hodgens is a 56 year old male who suffers from hypertension and atrial fibrillation. General Dynamics is in the business of designing and manufacturing nuclear powered submarines for the United States Navy. In February 1988, Hodgens, then 48 years old, was hired by General Dynamics as a senior program planner. The principal duty of a program planner was to monitor the progress of a particular project in order to determine if the project was preceding on schedule and within budget. In 1989, 1990 and 1991, Hodgens received favorable evaluations with respect to his job performance.

In October of 1991, General Dynamics eliminated the program planning function as part of a major reduction in force brought on

by decreased defense spending resulting from the end of the Cold War. Hodgens retained his classification as a senior program planner but his duties changed to those of a production control planner which entailed more direct involvement in the actual construction of submarines. As a result of the change, Hodgens' job performance began to decline. At first Hodgens was engaged in sound dampening work intended to make the submarine operate more quietly in order to avoid detection. In April of 1993 he was assigned to monitor the progress of constructing what was called Module 82.

In August of 1993, while working on Module 82, Hodgens began to experience problems with his vision, chest pains, dizziness, and episodes of profuse sweating. He immediately consulted Dr. Wilkinson, who had been treating him for a number of years for hypertension. Dr. Wilkinson was unable to make any diagnosis but saw Hodgens a number of times during August and September for the purpose of monitoring his blood pressure and making some adjustments to his medication. Dr. Wilkinson saw no need for Hodgens to take time off from his job but Hodgens, nevertheless, chose not to work from August 5 through September 20, 1993.

On September 21, 1993, Hodgens reported for work. The company nurse noted that Hodgens' blood pressure was elevated and that his heart beat was irregular and she sent Hodgens home because he did not have a doctor's certificate explaining the reasons for his absence. The following day, Hodgens saw Dr. Wilkinson, who detected atrial fibrillation (i.e., arrhythmia of the heart) and prescribed Coumadin, an anticoagulant designed to minimize the risk of a heart attack. However, Dr. Wilkinson reassured Hodgens that, there was no reason for him to take time off from his job.

Several days later, Hodgens, again, returned to work at which time he was reassigned from Module 82 to sound dampening activities. In March 1994, he, again, was reassigned, this time to the machine shop for the purpose of working on a short-term project. Despite these various re-assignments,

Hodgens retained his classification as a "senior production control planner."

In April 1994 General Dynamics began another round of layoffs as part of its ongoing reduction of force. The company's established lay off policy provided for individual employees to be ranked within their job classifications or with those other employees performing similar tasks and for the rankings to be considered in determining which employees should be laid off. General Dynamics included Hodgens among those to be laid off citing his low rankings in 1992, 1993 and 1994.

### The Plaintiff's Claims

Hodgens' seven count complaint contains a potpourri of claims under both federal and Rhode Island law. The claims may be grouped into four categories because the law applicable to each state law claim is essentially the same as the law applicable to the corresponding federal law claim. See Newport Shipyard, Inc. v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897–98 (R.I.1984) (holding that Rhode Island's Fair Employment Practices Act should be interpreted in accordance with Title VII of the Civil Rights Act of 1964). Those claims are:

1. That his termination violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (Count I), and the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28–48–1 et seq. (Count II) because it was prompted by the fact that he took sick leave to which he was entitled under those statutes;

2. That he was terminated because of a disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Count V), and the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28–5–1 et seq. (Count VI)[1];

3. That he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq, (Count III), and

---

1. Hodgens also asserted a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 793 et seq.

(Count VII), but that claim was voluntarily dismissed.

the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28–5–1 *et seq.* (Count IV); and

4. That his termination violates the prohibitions against handicap discrimination and age discrimination contained in the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws § 42–112–1 *et seq,* (Count VIII).

## Discussion

### I. The Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is *material* if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute with respect to a material fact is *genuine* if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.* In determining whether there is a genuine issue of material fact, the Court must draw all reasonable inferences favorable to the party against which the motion is directed. *In re Varrasso,* 37 F.3d 760, 763 (1st Cir.1994).

When a motion for summary judgment is directed against a party that bears the burden of proof; and the motion is supported by facts that negate an essential element of the nonmoving party's case or indicate a lack of proof to support that case, the nonmoving party is obliged to proffer enough contrary evidence to establish that there is a genuine factual dispute requiring a trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *FDIC v. Elder Care Serv. Inc.,* 82 F.3d 524, 526 (1st Cir.1996); *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

That obligation is not satisfied by making unsupported allegations or by raising the possibility that the required evidence might turn up in the future. *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Even promises that such evidence will be produced at trial are insufficient. *Garside,* 895 F.2d at 49 ("[A] mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax.").

Nor is the obligation discharged by presenting evidence that is only colorable and lacks substance. The test is not whether the record is devoid of any evidence favoring the nonmovant. Rather, the test is whether the nonmovant has presented specific facts sufficient to permit a reasonable jury to find in its favor. *De Arteaga v. Pall Ultrafine Filtration Corp.,* 862 F.2d 940, 941 (1st Cir. 1988); *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988).

### II. The Family and Medical Leave Act Claim

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Accordingly, the employee must establish:

1. that the employee suffers from a serious health condition; and

2. that such condition renders the employee unable to perform the functions of his or her job.

### A. Serious health condition

The statute defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

In this case, Hodgens concedes that he did not receive any inpatient care for his condition. However, he contends that his visits to Dr. Wilkinson between August 4, 1993, and September 27, 1993, constituted continuing treatment by a health care provider. In support of that contention, Hodgens cites 29 C.F.R. § 825.114(a)(2) which defines "continuing treatment by a health care provider" to include:

1. "[a] period of *incapacity* (i.e., inability to work, attend school or perform oth-

er regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves ... [t]reatment two or more times by a health care provider...." 29 C.F.R. § 825.114(a)(2)(i) (emphasis added); or

2. "[a]ny period of *incapacity* or treatment for such incapacity due to a chronic serious health condition." C.F.R. § 825.114(a)(2)(iii) (emphasis added); or

3. "[a]ny period of absence to receive multiple treatments...." 29 C.F.R. § 825.114(a)(2)(v).

However, Hodgens' reliance on those provisions is misplaced. Subsections (a)(2)(i) and (a)(2)(iii) both require a showing that the employee was *incapacitated.* In this case, Hodgens is unable to satisfy that requirement because the uncontroverted evidence establishes that his condition did not prevent him from performing his job. Although, Dr. Wilkinson termed Hodgens' decision to stay out of work as "not unreasonable," she never recommended that he do so. On the contrary, Dr. Wilkinson stated that she "actually would have felt comfortable with his going back to work." *See Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1037 (M.D.Tenn.1995) (where physician never advised plaintiff to remain off work but simply stated it was "reasonable" for plaintiff to do so, evidence was insufficient to show plaintiff has serious health condition); *Gudenkauf v. Stauffer Communications, Inc.,* 922 F.Supp. 465, 475–76 (D.Kan.1996) (where plaintiff failed to present medical evidence that condition required her to be out of work and medical evidence was to contrary, plaintiff failed, as matter of law, to prove she has serious health condition).

Nor does the time that Hodgens remained out of work qualify as a "period of absence to receive multiple treatments" within the meaning of subsection (a)(2)(v). Both common sense and the plain language of that subsection dictate that an employee's absence must be necessary to enable the em-

ployee to receive treatment. If an employee can obtain treatment without missing work, any period of absence cannot be attributed to the need to receive treatment.

Here, there is no evidence that Hodgens was required to be absent from work in order to receive treatment from Dr. Wilkinson. Indeed, it is undisputed that, both before and after the period in question, Hodgens regularly saw Dr. Wilkinson for periodic checkups and for the purpose of monitoring his high blood pressure without missing any time from work.

### B. *Ability to perform job*

■ Even if Hodgens' condition accurately could be characterized as a serious health condition, his FMLA claim would fail because there is no evidence that the condition rendered him unable to perform the functions of his position. 29 U.S.C. § 2612(a)(1)(D). As already noted, Dr. Wilkinson found that Hodgens was able to continue working and there is no indication that he could not carry out the duties of his job.

### III. *The ADA Claim*

The ADA prohibits discrimination against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). When there is no direct evidence of discrimination, the burden shifting rules set forth in *McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), are applied. *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir.1996) Thus, the plaintiff must shoulder the initial burden of establishing a *prima facie* case by proving that:

1. the plaintiff has a disability within the meaning of the ADA;

2. the plaintiff is qualified to perform the essential functions of the job, with or without reasonable accommodation;

3. the plaintiff was subject to an adverse employment action by the defendant; and

4. the plaintiff was treated less favorably than similarly situated non-disabled employees.

*Jacques,* 96 F.3d at 511.

Once a *prima facie* case is proven, the burden of production shifts to the defendant but requires, only, that the defendant articulate a legitimate, nondiscriminatory reason for its action. If that is done, the plaintiff must prove that the proffered reason is merely a pretext for disability discrimination. *McDonnell Douglas,* 411 U.S. at 802–06, 93 S.Ct. at 1824–26; *see Jacques,* 96 F.3d at 511.

In this case, General Dynamics' motion for summary judgment turns on whether Hodgens has proffered sufficient evidence to prove the "disability" and "qualified" prongs of his *prima facie* case.

### A. Disability

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A).

■ In this case, Hodgens identifies his impairments as hypertension (i.e., high blood pressure) and atrial fibrillation (i.e., arrhythmia of the heart). It is undisputed that Hodgens suffers from both conditions but the evidence is insufficient to support either of Hodgens' two inconsistent arguments that those conditions substantially limited one or more of his major life activities.

Hodgens' first argument is that any determination with respect to the limiting effect of his impairment should be made without regard to the fact that both his hypertension and atrial fibrillation were controlled by medication. He contends that he should be considered disabled because, without the medication, the increased risk of a stroke or a heart attack would have prevented him from working. In support of that argument, Hodgens cites EEOC interpretative guidelines which state:

The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, *without regard to mitigating measures such as medicines* . . . .

29 C.F.R. Pt. 1630, App. § 1630(j) (emphasis added).

However, while it may be helpful to know how a government agency interprets a statute that it administers, the agency's interpretation does not supersede the statute, itself, and is not binding upon a court charged with the responsibility of construing and applying the statute. *See Shalala v. Guernsey Memorial Hosp.,* 514 U.S. 87, ——, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995); *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 15 n. 2 (1st Cir.1997) (EEOC Technical Assistance Manual "is not law" and "does [not] have the force of law") (quotation omitted); *Carparts Distribution Center Inc. v. Automotive Wholesaler's Assoc. of New England, Inc.,* 37 F.3d 12, 16 (1st Cir.1994) (EEOC's interpretive guidelines "not controlling upon the courts by reason of their authority") (quoting *Meritor Savings Bank. FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). Nor is the agency interpretation entitled to the same deference ordinarily accorded to its duly promulgated regulations that are subject to the rule making requirements of the Administrative Procedures Act. *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 157, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991); *Commonwealth of Mass. v. FDIC,* 102 F.3d 615, 621 (1st Cir.1996).

In this case the EEOC guidelines are at odds with the plain language of the ADA. The statute defines a "disability" as an "impairment" that limits a major life activity. 42 U.S.C. § 12102(2)(A). It is difficult to see how a condition that has been ameliorated so that it does not affect an individual's ability to function normally can be construed as an "impairment". It is even more difficult to see how such a condition could be one that "substantially limits" a major life activity. The use of the present tense in the term "substantially *limits* " unambiguously connotes the requirement of a real and existing limitation as opposed to a hypothetical one. If Congress intended to require only that a condition "could substantially limit" a major life activity if left unattended, Congress easily could have said that.

In the absence of any indication that Congress intended the determination of disability to be based upon whatean individual's ability to function *might* be *if* he abandoned reasonable treatment measures, the plain language of the statute requires that the determination be based upon the individual's *actual* ability to function, taking into account the ameliorative effects of medication. *See Murphy v. United Parcel Service, Inc.,* 946 F.Supp. 872, 881 (D.Kan.1996) ("Because the plain language of the ADA conflicts with the EEOC's Interpretative Guidance, ... [the plaintiff's] impairment should be evaluated in its medicated state."); *Schluter v. Industrial Coils, Inc.,* 928 F.Supp. 1437, 1444–45 (W.D.Wisc.1996) (the EEOC guidelines are in direct conflict with the statute and plaintiff must show condition affects her in fact, rather than how it would affect her hypothetically if she did not take medication); *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 813 (N.D.Tex.1994) (rejecting "EEOC's gloss" as contrary to statute) Simply stated, an individual who takes medication that prevents a physical or mental condition from substantially limiting any major life activities is not disabled within the meaning of the ADA.

Hodgens argues, in the alternative, that even if his medication is considered for purposes of assessing his condition, he should be deemed disabled because the medication produces various side effects. Specifically, he refers to the increased risk of hemorrhaging resulting from Coumadin, his atrial fibrillation medication, and the fact that Lopressor, his hypertension medication, causes fatigue and makes his hands and feet cold.

However, Hodgens has not presented any evidence that such side effects have substantially limited a major life activity. Although Hodgens' affidavit asserts that his cold hands "hinder[ed]" his ability to grasp objects, there is no indication as to whether, how or to what extent that limits his ability to work or do anything else.

Similarly, Hodgens has failed to identify any major life activity that has been substantially limited by his increased susceptibility to hemorrhaging. There is no evidence that such susceptibility restricts his activities in any way. His subjective fear that he might "bleed to death" should he cut himself does not render him disabled any more than would a high cholesterol level that generates heightened concern about the possibility of a heart attack.

Hodgens also asserts that even if he is not disabled, he falls within the ADA's definition of disabled because General Dynamics *regarded* him as disabled. *See* 42 U.S.C. § 12102(2)(C). However, there is absolutely no evidence that General Dynamics regarded Hodgens as having any impairment that substantially limited his ability to do his job or to engage in any other major life activity. Indeed, during his deposition Hodgens conceded that none of his supervisors had ever given any such indication. Consequently, Hodgens' assertion is nothing more than unsupported speculation.

### B. Pretext

Even if Hodgens could be considered "disabled," his ADA claim would fail because the evidence is insufficient to establish that General Dynamics' proffered reason for terminating him was pretextual. *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 465 (1st Cir. 1996) (once a legitimate nondiscriminatory reason for termination is articulated by employer, burden is on employee to prove both that the proffered reason was false and that discrimination was the true reason for his termination). On the contrary, the uncontradicted evidence is that Hodgens was laid off as part of a massive reduction in force and that, pursuant to an established company policy, he was among those laid off because of his low job performance ranking.

Hodgens cites a General Dynamics interoffice memo issued shortly before his termination as evidence that the ranking system had been eliminated. However, that memo refers to "[the] elimination of ranking *for the purpose of merit distribution.*" (emphasis added). The evidence indicates that the ranking system continued to be used in making *lay-off* decisions. Thus, Hodgens ignores a subsequent interoffice memo that expressly states: "[a]lthough ranking has been excluded from the annual performance appraisal, it will continue to be applied for retention, selection and layoff decisions."

Hodgens also attacks his ranking by pointing out that he was compared only to those senior planners who performed production control duties rather than to all senior planners in the company. However, that fact is insufficient to support a finding of pretext. General Dynamics' ranking system provides that "[i]f there are individuals with identical titles who perform different job duties, separate rank groups should be developed." In this case, General Dynamics has presented evidence that Hodgens ranking was based on a comparison with those senior planners having similar duties and Hodgens has presented no evidence to the contrary.

## IV. The ADEA Claim

The ADEA makes it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Once again, in the absence of direct evidence, the burden shifting rules set forth in *McDonnell Douglas* apply. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996). In ADEA cases, the employee's *prima facie* case consists of proof that:

1. the employee is at least 40 years of age;
2. the employee met the employer's legitimate job performance expectations;
3. the employee was subject to an adverse employment action by the employer; and
4. the employer did not treat age neutrally, or, younger persons were retained in the same position.

*LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

In this case, although General Dynamics disputes the second and fourth elements, its motion for summary judgment focuses on what it contends is the absence of any evidence that its proffered reason for terminating Hodgens was a pretext for discrimination.

As already noted, General Dynamics has presented a legitimate nondiscriminatory reason for terminating Hodgens. Since Hodgens has produced no evidence that the proffered reason was pretextual, his ADEA claim, also, is fatally flawed.

## V. The State Civil Rights Claim

The Rhode Island Civil Rights Act of 1990, states, in pertinent part, that "[a]ll persons within the state, regardless of ... handicap [or] age, ... shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property...." R.I. Gen. Laws § 42–112–1(a).

The statute has been held applicable to claims of employment discrimination. *Ward v. City of Pawtucket Police Dep't,* 639 A.2d 1379, 1381 (R.I.1994). However, in order to prevail on such a claim, an employee must prove discrimination.

In this case, Hodgens alleges handicap and/or age discrimination. Since, as already noted, there is no evidence to support either claim, Hodgens' claim under the Rhode Island Civil Rights Act also fails.

### Conclusion

For all the foregoing reasons, the defendant's motion for summary judgment is granted and the clerk is directed to enter judgment for the defendant with respect to all counts of the complaint.

IT IS SO ORDERED,