DECISION
On July 25, 1997, the parties in the instant matter came before this Court on defendant GTech Corporation's motion for summary judgment. At that time, the Court denied the motion and informed the parties that a written decision would follow.
In 1995, Kathleen Walker (hereinafter referred to as Plaintiff), filed the underlying complaint alleging that her termination from GTech Corporation (hereinafter referred to as GTech or defendant), in August of 1994, was wrongful and in violation of the Fair Employment Practices Act, codified at R.I.G.L. § 28-5 et. seq. Specifically, Plaintiff alleged in her amended complaint that "[o]n August 19, 1994, defendant involuntarily terminated plaintiff's employment without cause . . . [and] [t]hat the defendant's action in terminating the plaintiff's employment, as aforesaid, constituted wrongful discrimination against plaintiff on the basis of her supervisor's perception of her as a person with a physical impairment." (Plaintiff's Amended Complaint paras. 4-5) (emphasis added). In addition, Plaintiff asserts her termination also violated the 1990 Civil Rights Act as codified at § 42-112-1 et. seq.. The Defendant answered the complaint denying the allegations of discrimination. The Defendant also filed a counterclaim under R.I.G.L. § 12.5.1-1 et. seq. based on allegations that Plaintiff tape recorded conversations between GTech employees without their consent.
FACTS
The Plaintiff was hired by GTech as an internal auditor, in March of 1992, and was later diagnosed as suffering from endometriosis.[1] Then, in late August of 1993, Plaintiff orally notified several people in her office about her condition. Among these people was Plaintiff's immediate supervisor, Susan Cole. (See Deposition of Kathleen Walker dated Feb. 28, 1997, at 39-40). Additionally, Plaintiff had several other informal conversations with fellow GTech employees regarding her condition during the Fall of 1993. In September of 1993, Plaintiff underwent laproscopy and a dilation and curettage procedure to treat the condition. After this surgery, and as a result, Plaintiff developed an infection and could not return to work immediately as planned. According to Plaintiff, this is when her difficulties at GTech and with her supervisor, Susan Cole, began. (See Deposition of Kathleen Walker dated Feb. 28, 1997, at 74).
More specifically, Plaintiff alleges that when she informed Cole of the impending surgery, Cole began questioning Plaintiff about work she was scheduled to do. Similarly, when Plaintiff needed to take additional days off as a result of the infection, Cole again questioned Plaintiff about other scheduled work projects. Shortly thereafter, Cole relieved Plaintiff of her responsibility on two major audits, even though Plaintiff had assured Cole, over the phone, that she would be able to complete those assignments. In response to these assurances, Cole merely hang up on Plaintiff. Not only was Plaintiff removed from the aforementioned assignments, but new assignments also dwindled. (See Deposition of Kathleen Walker dated Feb. 28, 1997, at 50-54, 62.
Following her surgery, Plaintiff also needed to leave work once a month for follow-up treatments and injections. This series of monthly injections lasted until the Spring of 1994. It was during the course of this follow-up treatment that Cole issued an employee evaluation of Plaintiff which stated that absenteeism was a problem. (See Deposition of Kathleen Walker dated Feb. 28, 1997, at 60). After a series of evaluations, deficiency reports and meetings, Plaintiff was fired by GTech on December 7, 1995. According to the record, Susan Cole played a role in the decision to terminate Plaintiff.
Defendant has moved for summary judgment and seeks to limit Plaintiff's allegations to those in her complaint, namely that Plaintiff was fired because of Cole's perception that she was handicapped. Thus Defendant asserts that Plaintiff cannot argue that she is in fact handicapped and Plaintiff cannot prove that Cole perceived her to be handicapped. As a result, Defendant requests this Court enter summary judgment in its favor. Alternatively, Defendant alleges that endometriosis is not a qualifying handicap under Rhode Island's antidiscrimination laws, and even if it were, Plaintiff was not fired because of this condition but because of her documented history of poor job performance, and a "memo writing campaign" instituted by Plaintiff which disrupted GTech's operations. Plaintiff counters that endometriosis is a qualifying condition and that she can produce sufficient evidence showing that Susan Cole perceived her to be handicapped.
THE LAW
To be legally adequate, a claim for relief need only contain "a short and plain statement of the claim demonstrating that the pleader is entitled to relief" as well as a demand for judgment.See Super. Ct. R. Civ. P. 8 (a). The Plaintiff is not required to plead the precise legal theory upon which his or her claim is based, but must merely give the opposing party fair and adequate notice of the type of claim being asserted. Haley v. Town ofLincoln, 611 A.2d 845, 848 (R.I. 1992).
Here, however, Plaintiff's complaint clearly and unequivocally states that she was discriminated against by GTech because "of her supervisor's perception of her as a person with a physical impairment." (Plaintiff's Amended Complaint para. 5). Thus, Plaintiff included the precise legal theory of discrimination on which she intended to rely and, as such, the complaint as it stands will be limited to that theory, namely discrimination based on a perceived handicap. This limitation is imposed because given the specific nature and language of the complaint, Defendant was not provided fair notice regarding a possible intention on the part of Plaintiff to rely on other separate legal theories of discrimination. As such, the only issue before this Court is whether the record contains sufficient evidence that Susan Cole perceived Plaintiff to be handicapped and discriminated against her, based on this perception.
Summary judgment is a drastic remedy that should be cautiously applied. Hydro-Manufacturing, Inc. v. Keyser-RothCorp., 640 A.2d 950 (R.I. 1994); McPhillips v. Zayre Corp.,582 A.2d 747 (R.I. 1990). When the proponent demonstrates by affidavits, depositions, pleadings and other documentary matter before the court that they are entitled to judgment as a matter of law and that there are no genuine issues of material fact, however, such a motion should be granted. Palmisciano v.Burrillville Racing Ass'n., 603 A.2d 317 (R.I. 1992). In order to successfully oppose a properly supported motion, the opposing party must affirmatively present evidence which establishes the existence of a genuine issue of material fact. Renaud v.Sigma-Aldrich Corp., 651 A.2d 1238 (R.I. 1994). When an opposing party fails to carry this affirmative burden of proof, but merely rests upon the allegations of their pleadings or the naked conclusions contained in an affidavit, then summary judgment should be granted. Senn v. MacDougall, 639 A.2d 494 (R.I. 1994); Grande v. Almac's Inc., 623 A.2d 971 (R.I. 1993).
When reviewing the materials and evidence produced by the parties on a motion for summary judgment, this Court's purpose is issue finding, not fact finding. Saltzman v. Atlantic Realty,434 A.2d 1343 (R.I. 1981). Thus, the Court will not pass upon the weight or credibility of the evidence but will consider the affidavits and other evidence in a light most favorable to the party opposing the motion. Palmisciano v. Burrillville RacingAss'n, 603 A.2d 317 (R.I. 1992). Additionally, the Court will draw from the evidence before it all reasonable inferences that would support the opposing party's claim. Casador v. First Nat'lStores Inc., 478 A.2d 191 (R.I. 1984).
Section 7 (1)(ii) of Rhode Island's Fair Employment Practices Act as codified at Title 28, Chapter 5 states that it shall be an unlawful employment practice for any employer to discharge an employee because of the employee's handicap. Similarly, Section 1 of the Rhode Island Civil Rights Act of 1990 as codified at Title 42, Chapter 112 prohibits discrimination against persons with handicaps to the extent that such discrimination limits those persons' rights to make and enforce contracts. Handicaps as related to the above provisions and Plaintiff's claim are statutorily defined in R.I.G.L. § 28-5-6 (9) as any physiological disorder or condition affecting the reproductive system which substantially limits functions such as caring for one's self, performing manual tasks, walking and working. In addition, the definition of handicapped includes those persons who do not suffer from a qualifying condition as described above, but who are perceived to be handicapped and treated as though they are handicapped as define above.
Any action brought under R.I.G.L. § 28-5-7 is to be analyzed under the "same analytical framework" as federal Title VII cases.Newport Shipyard v. RI Comm'n for Human Rights, 484 A.2d 893
(R.I. 1984). This framework involves burden shifting, under which Plaintiff must first produce evidence sufficient to establish a prima facie case of discrimination. This prima facie case requires a plaintiff alleging discriminatory termination to show that 1) they suffer from a "handicap" as defined above, 2) they were qualified to perform the job's essential functions, 3) they were subject to an adverse employment action by the defendant (i.e. discharged), and 4) they were treated less favorably than similarly situated non-disabled employees. See NewportShipyard v. RI Comm'n for Human Rights, 484 A.2d 893 (R.I. 1984); Hodgens v. General Dynamics Corp., 963 F. Supp. 102, 106 (D. R.I. 1997).
Similarly, to succeed on a claim that one was discriminated against based upon a supervisor's perception of a handicap, a plaintiff must prove that 1) they were regarded as having an impairment that substantially limited their ability to do their job or to engage in other major life activities, 2) that they were qualified to perform their job, 3) that they were subjected to adverse employment actions, and 4) that they were treated less favorably than employees who were not perceived as handicapped.
If plaintiff meets this burden, then the defendant bears the burden of producing a legitimate nondiscriminatory reason for the adverse action. Newport Shipyard v. RI Comm'n for Human Rights,484 A.2d 893 (R.I. 1984). Upon producing evidence of such a nondiscriminatory rationale the plaintiff must prove that this "nondiscriminatory" reason is in fact a mere pretext for the true discriminatory motivation behind the action. Texas Dept. ofCommunity Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Mine Safety Appliances Co. v. Berry,620 A.2d 1255 (R.I. 1993).
In addition to bringing claims of discrimination based on Rhode Island's Fair Employment Practices Act, R.I.G.L. § 42-112-1et. seq. also provides broad protection against all forms of discrimination in all phases of employment. See Ward v. Cityof Pawtucket Police Dep't, 639 A.2d 1379, 1381 (R.I. 1994). This provision, however, only applies to cases of discrimination and, as such, a would-be plaintiff must first establish discrimination as described above. Ward v. City of Pawtucket Police Dep't,639 A.2d 1379 (R.I. 1994); Hodgens, 963 F. Supp. at 109.
The record, as it stands, does contain sufficient evidence so as to create a genuine issue of material fact as to the four elements required for a prima facie case of discrimination. While there appeared to be some problems between Cole and Plaintiff prior to Plaintiff's surgery, a jury could find those problems were no greater than those experienced by everyone else in the office — that is, until after Plaintiff's surgery. At that time the difficulties escalated to such an extent that it appears a total breakdown in the employee supervisor relationship occurred.
A jury could view the evidence and the timing of this breakdown and find that Cole perceived Plaintiff to be handicapped and that this perception motivated her actions. The Plaintiff's sworn deposition testimony reveals that the relationship between herself and Cole quickly deteriorated after Plaintiff needed time away from work to undergo the surgical procedure that took place in September and during the follow-up treatments. It is also during this time frame that Plaintiff's evaluations dropped from fives, and sixes (out of possible sevens) to ones and twos. A latter evaluation dated September 16, 1993, states that "Kathy needs to re-prioritize her life and focus on her job. Kathy is easily distracted by her focus on her after work activities." Similarly, Plaintiff attributes statements to Cole during this time to reflect a belief that Plaintiff was unable to travel or work because of her condition, even though Plaintiff assured her she would be able to complete the work. (See Deposition of Kathleen Walker dated Feb. 28, 1997, at 62). It was also after the surgery, and within this same time frame that Plaintiff was allegedly removed from audits and given work.
Plaintiff also asserts that in the creation of the post-surgery evaluation, procedural and substantive guidelines were breached by Cole which made the evaluations null and void. (See Deposition of Kathleen Walker dated Feb. 28, 1997, at 156). This evaluation was followed by other informal evaluations and deficiency performance plans. In response to these alleged deficiencies, Plaintiff states that she still made honest efforts to improve. According to Plaintiff, however, these efforts were thwarted by Cole who denied Plaintiff continuing education money to take a business writing course, remained consistently unavailable to answer questions or to give Plaintiff guidance as how to improve, and denied Plaintiff the audit experience needed to improve. (See Deposition of Kathleen Walker dated Feb. 28, 1997, at 155, 203). The record, as it stands now, also indicates that Cole was in many instances unable to support her criticisms with concrete anecdotal evidence.
It is also apparent that there is some evidence from which a jury could find that Plaintiff was qualified to perform the essential functions of an internal auditor at GTech. It is undisputed that Plaintiff met GTech's internal auditor position requirements in that she had both a bachelor's degree in accounting and more than two years business and audit experience prior to joining GTech. Legally, the jury need look no further than the fact that Plaintiff was hired by GTech to make a finding that Plaintiff was qualified for the position. In addition, in Plaintiff's first evaluation which occurred prior to Plaintiff's surgery and the resulting absenteeism, Susan Cole stated that Plaintiff had the "requisite skills to effectively complete all tasks," and that what Plaintiff needed was ". . . exposure to more audit situations."
The record and allegations at this time also establishes that Plaintiff was subjected to an adverse employment action by the Defendant in that she was fired by them. The record also indicates that Cole played a role in the decision-making process which led to Plaintiff's termination and that Cole failed to follow GTech procedures and guidelines in the Walker matter.
Lastly, the record contains sufficient allegations for a jury to find that Plaintiff was treated differently than employees who were perceived as non-disabled. See Newport Shipyard v. RIComm'n for Human Rights, 484 A.2d 893; Hodgens v. GeneralDynamics Corp., 963 F. Supp. at 106. Plaintiff clearly and specifically maintains in her deposition and in letters and memos that her work papers which were considered to be unsatisfactory were in fact the same as other employees. (See Defendant's Exhibit 12). She also indicates that she alone was required to keep daily time logs, that she was excluded from office lunches, training sessions, and audits. (See Defendant's Exhibit 6; Deposition of Kathleen Walker dated Feb. 28, 1997, at 65, 76, 128). Given these allegations, it is for a jury, not for this Court on a motion for summary judgment, to determine whether Plaintiff was, in fact, discriminated against.
In its defense, GTech asserts that Plaintiff was fired not because of any perceptions Susan Cole may have had, but rather because Plaintiff's work was unsatisfactory. In support of this assertion, Defendant has produced Plaintiff's post-surgery evaluation, a series of memos from Susan Cole to Plaintiff and vice versa, and the report and affidavit of Frank Ward stating that upon reviewing some of Plaintiff's work papers, he found them insufficient. Plaintiff on the other hand asserts that this justification is merely a pretext to cover Cole's real discriminatory reason for firing Plaintiff.
Given the jumbled state of the record at this pretrial stage, it appears there was, at a minimum, a major personality conflict between Plaintiff and Cole. How it began, and why it escalated, is still unclear, but it cannot be said that the reason for the breakdown in this relationship which ultimately resulted in Plaintiff's termination was not discriminatory. This is because the record as it currently stands (namely, containing only Plaintiff's deposition and other documents) is sufficient to allow a jury to find that the proffered GTech reason is a mere pretext. Thus, while Plaintiff may not survive a Rule 50 motion for judgment as a matter of law, she does survive the instant motion for summary judgment.
Similarly, because a prima facie case of discrimination exists which is sufficient to survive summary judgment as to the Fair Employment Act claims, entry of summary judgment on the Civil Rights Act claim is also inappropriate.
CONCLUSION
Due to the fact that the evidence submitted in support of Defendant's motion (the Walker deposition), when viewed in the light most favorable to Plaintiff, supports her prima facie case of discrimination and her allegation that the "poor work performance" rationale was merely a pretext, summary judgment is hereby denied.
Counsel shall prepare and submit the appropriate order.
[1] Endometriosis is a condition in which tissue resembling endometrium is found in extrauterine locations. While no classical presentation of symptoms exists, it is common for the condition to result in the development of cysts, abdominal pain, abnormal bleeding, dysmenorrhea and infertility. Less commonly, the disease can cause appendicitis, bowel and urinary tract obstructions and nerve damage. Robert K. Ausman Dean E. Snyder, 1 Medical Library § 11(d) (1988); Martinell v. Montana PowerCo., 268 Mont. 292, 303-304, 886 P.2d 421 (1994).