**SNET CELLULAR, INC. d/b/a Cellular One of Rhode Island and Bristol County, Massachusetts, Barbara Burdick, and Howard Bentley**

v.

**Donna ANGELL, Henry Graham, Peter Fanguillo, Robert Ornstein, and Gary Prescott, in their capacity as members of the Town of Richmond Zoning Board of Review, & The Town of Richmond.**

**C.A.No. 97–0597T.**

United States District Court, D. Rhode Island.

June 2, 2000.

Andrew M. Teitz, Nancy Ellen Giorgi, Ursillo, Teitz & Ritch, Ltd., Providence, RI, for Plaintiffs.

Christopher H. Little, Little, Bulman & Whitney, Providence, RI, Howard C. Sweet, Jr., Ashaway, RI, for Defendants.

*Memorandum and Order*

TORRES, Chief Judge.

MEMORANDUM AND ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .191

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .192

Contentions of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .193

The Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .193
     The Telecommunications Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .193
     R.I. Gen. Laws § 45–24–69 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .194

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .194
     The Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .195

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .195
    I.  The No "Substantial Evidence" Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .195
       A.  Compatibility with Neighboring Uses . . . . . . . . . . . . . . . . . . . . . . . . . . . .196
       B.  Consistency with Purposes of Comprehensive Plan . . . . . . . . . . . . . . . . . .196
       C.  Compatibility with Orderly Development of Town . . . . . . . . . . . . . . . . . . . .196
       D.  Environmental Compatibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .197
    II.  The Prohibition of Services Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .197
    III.  The Untimeliness Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .198

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .199

SNET Cellular, Inc. ("SNET") and the owners of land that SNET proposes to lease for the purpose of constructing and operating a cellular communications tower brought this action pursuant to the Federal Telecommunications Act, 47 U.S.C. § 332 (the "TCA"), and R.I. Gen. Laws § 45–24–69(a). The plaintiffs seek reversal of a decision by the Richmond Zoning Board of Review (the "ZBR" or the "Board") denying SNET's application for a special use permit that would allow a tower to be constructed. The plaintiffs also seek either reversal of that portion of the ZBR's decision denying their application for a dimensional variance or a determination that, contrary to a ruling by Rich-

mond's zoning official, such a variance is not required.

The defendants have moved for summary judgment, and the questions presented are:

(1) whether there is substantial evidence in the record supporting the ZBR's decision;

(2) whether the ZBR acted on SNET's application within a reasonable time; and

(3) whether the defendants' actions effectively prohibit the provision of wireless communications services in the Richmond area.

Because I find, based upon the undisputed evidence, that the first two questions should be answered affirmatively; and, because I further find that the record is not sufficiently developed to permit an answer to the third question, the motion for summary judgment is granted in part and denied in part.

### Background

SNET is in the business of providing interstate cellular communications service. Federal Communications Commission ("FCC") regulations require SNET, as a licensee, to provide service to a specified geographic area. In 1996, SNET engineers determined that, in order to satisfy that requirement, SNET needed to install an antenna array in the Shannock Hill area of the Town of Richmond, Rhode Island. Accordingly, SNET entered into an agreement to lease a parcel of land in Richmond owned by Barbara Burdick and Howard Bentley (the "Bentley Property" or the "Site") for the purpose of erecting a 190–foot antenna tower.

The Bentley Property is a 25–acre lot most of which is wooded and on which a single-family residence is located. The Bentley Property is zoned R–2, at the time of SNET's application, "[c]ommunication ... towers and antenna" were permitted in R–2 zones only as special uses. *See* Richmond Code, § 18.16.010. Moreover, under the Richmond Zoning Code (the

"Code"), structures for permitted uses could not exceed a height of 35 feet, *see id.* § 18.20.020, except that "[s]pires, towers, belfries, steeples, flagpoles, chimneys, water standpipes, radio or television antennae, silos or similar structures," were exempt from the height requirement. *Id.* § 18.36.050.

Because Richmond's Zoning Official determined that the proposed telecommunications tower was not a "radio or television antenna[ ]," SNET applied to the ZBR for a dimensional variance as well as a special use permit. That application was filed on July 2, 1996.

The ZBR consists of five members and two alternates, all of whom serve as part-time, unpaid volunteers. The Board, ordinarily, meets once a month, and it scheduled a hearing on the plaintiffs' application for its next scheduled meeting, on July 22, 1996. However, the Board did not begin considering SNET's application until December because both the July and October meetings were consumed by hearings on another telecommunications tower application; the August session was canceled due to lack of a quorum; SNET's attorney requested a postponement of the hearing scheduled for September; and the attorney representing objectors requested a postponement of the hearing scheduled for November.

At the initial hearing, SNET maintained that, although it was applying for a dimensional variance, no such variance was required because the proposed communications tower was a radio antenna structure that was exempt from the Code's height restrictions.

When it became apparent that the hearings would require a considerable amount of time, the Board decided to hold "special" hearings devoted entirely to SNET's application between January 9 and July 24 of 1997.

At those hearings, SNET and residents opposed to the application presented testimony and documentary evidence focusing

on the impact that the proposed tower would have on nearby property and the tower's compatibility with Richmond's comprehensive land use plan. Some evidence also was presented as to the question of whether there were alternative sites that could provide the required service coverage.

During the period that those hearings were being conducted, the Richmond Town Council decided to develop a plan that would establish where cellular communications towers could be placed in the town. On June 24, 1997, pending completion of that plan, the Council imposed a moratorium on the issuance of special use permits for wireless communication towers. However, the moratorium exempted applications, such as SNET's, that were filed before its adoption. The moratorium lasted until October 7, 1997, when the Council amended the Zoning Ordinance to make telecommunications towers a permitted use in industrial zones and to allow them as special uses in commercial zones or as attachments to existing structures in any zone.

On October 2, 1997, the ZBR denied SNET's application for both a special use permit and a dimensional variance. The Board determined that the proposed tower failed to satisfy any of the four requirements enumerated in the Zoning Ordinance for granting a special use permit; namely, that it must be: (1) "compatible with the neighboring uses;" and (2) "consistent with the purposes of the comprehensive plan;" and (3) "compatible with the orderly development of the town;" and (4) "environmentally compatible with neighboring properties including a consideration of prospective impact on property values." *See* § 18.52.010.

### Contentions of the Parties

SNET's complaint alleges that:

(1) the Board's decision violates both the TCA and Rhode Island law because it was not supported by "substantial evidence" as required by 47 U.S.C. § 332(c)(7)(B)(iii), and R.I. Gen. Laws § 45-24-69;

(2) the Board did not consider the application within a "reasonable period of time" as required by 47 U.S.C. § 332(c)(7)(B)(ii); and

(3) the Board's action, coupled with the Town Council's amendment to the Zoning Ordinance, has "the effect of prohibiting the provision of personal wireless services" in the Richmond area in violation of 47 U.S.C. § 332(c)(7)(B)(i).

The Complaint also alleges that the Board acted arbitrarily and capriciously in violation of the plaintiffs' rights to substantive due process under the United States and Rhode Island constitutions; but, in its response to the defendants' motion for summary judgment, SNET has neither briefed nor argued this claim.

Not surprisingly, the defendants argue that there is substantial evidence in the record supporting the ZBR's decision; that, under the circumstances, the ZBR acted with reasonable dispatch; and that neither the Board's decision nor the amended Ordinance effectively prohibits the provision of cellular telephone service in the Richmond area because there are other locations where the proposed tower could be erected.

### The Statutes

*The Telecommunications Act*

The TCA "[i]s a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Town of Amherst v. Omnipoint Communications Enterp. Inc.*, 173 F.3d 9, 16 (1st Cir.1999).

In general, the TCA leaves local governments free to regulate the location of cellular telephone facilities, but it imposes several limitations on that freedom. The principal limitations are a prohibition against effectively preventing the provision of cellular service, a requirement that local regulators process applications reasonably

promptly, and a requirement that their decisions be supported by "substantial evidence." 47 U.S.C. § 332(c)(7)(B).

More specifically, the statute provides:

(A) General authority.

Except as provided in this paragraph, nothing in this Act ... shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations.

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof ... shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A state or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7).

*R.I. Gen. Laws § 45–24–69*

Under Rhode Island law, zoning decisions are reviewed in accordance with essentially the same "substantial evidence in the record" test adopted by the TCA. *See* R.I. Gen. Laws § 45–24–69; *Alliance for Art & Architecture, Inc. v. Cummins*, No. 99–299, 2000 WL 622598, at *2 (R.I.Super. May 5, 2000). Thus, § 45–24–69 provides that, on appeal:

(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

.        .        .        .        .

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.

R.I. Gen. Laws § 45–24–69.

### Standard of Review

■ The standard of review applicable to claims brought pursuant to the TCA varies according to the nature of the claim. Claims that a zoning board erred in deciding that a proposed telecommunications facility did not meet the requirements of local law are reviewed under a rather deferential "substantial evidence" test. On the other hand, claims that the decision or local law, itself, run afoul of statutory limitations on local regulation are reviewed *de novo*. As the First Circuit has observed:

"In considering whether substantial evidence supports the agency decision, the court is acting primarily in a familiar 'review' capacity ordinarily based on the existing record.... By contrast, whether the town has discriminated among carriers or created a general ban involves federal limitations on state authority, presenting issues that the district court would resolve *de novo* and for which outside evidence may be essential."

*Town of Amherst v. Omnipoint Communications Enterp.*, 173 F.3d at 16 n. 7.

### The Substantial Evidence Test

As already noted, the substantial evidence test focuses on whether the Board's decision is in accord with local zoning requirements. *See Omnipoint Communica-*

*tions,* 173 F.3d at 14. Under both the TCA and Rhode Island law, "substantial evidence" means such relevant evidence as "a reasonable mind might accept as adequate to support a conclusion." *Penobscot Air Servs., Ltd. v. FAA,* 164 F.3d 713, 718 (1st Cir.1999); *BSP Trans., Inc. v. United States Dept. of Labor,* 160 F.3d 38, 47 (1st Cir.1998); *Caswell v. George Sherman Sand & Gravel Co.,* 424 A.2d 646, 647 (R.I.1981). It is "more than a mere scintilla" but "less than a preponderance." *American Tel. & Tel. Wireless PCS, Inc. v. City Council of Virginia Beach,* 155 F.3d 423, 429 (4th Cir.1998) (citations omitted); *Caswell,* 424 A.2d at 647.

■ In determining whether the Board's decision is supported by substantial evidence, one must consider the record as a whole, including contrary evidence. *See Penobscot Air,* 164 F.3d at 718. However, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (internal quotation marks omitted).

While the Board may not ignore evidence presented by the applicant, it is not required to credit that evidence; but, where the applicant's evidence is uncontroverted, there must be a good reason for rejecting it. *See Sprint Spectrum v. Town of Farmington,* No. 3:97 CV 863, 1997 WL 631104, at *4 (D.Conn. Oct.6, 1997).

The critical inquiry is whether, based on the record presented, the Board's decision was a reasonable one. *See Penobscot Air,* 164 F.3d at 718; *Apostolou v. Genovesi,* 120 R.I. 501, 508–09, 388 A.2d 821 (1978).

*The Summary Judgment Standard*

Claims that a zoning board's decision exceeded the permissible bounds of local regulation by effectively prohibiting the provision of cellular telephone service or that a board failed to act in a timely manner often turn on facts outside the scope of a typical zoning hearing. In any event, such claims present issues more appropriately addressed *de novo* by the District Court.[1] In this respect, such claims are no different from any other claims litigated in the District Court. Thus, a party moving for summary judgment must establish that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

When the party moving for summary judgment does not bear the ultimate burden of proof at trial, it satisfies its burden at summary judgment by simply showing (that is, pointing out to the court) that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant meets this burden, the nonmoving party must proffer enough contrary evidence to establish that there is a genuine factual dispute requiring a trial. *See Hodgens v. General Dynamics Corp.,* 963 F.Supp. 102, 105 (D.R.I.1997). "[T]he test is whether the nonmovant has presented specific facts sufficient to permit a reasonable jury to find in its favor." *Id.*

### *Discussion*

#### I. The No "Substantial Evidence" Claim

■ At the time of SNET's application, issuance of special use permits was governed by § 18.52.010 of the Richmond Zoning Code, which provided that:

A special use permit will be granted by the board following a public hearing only if, in the opinion of the board, such use is specifically listed as a permitted special use in this title and, further meets the following requirements:

1. It will be compatible with the neighboring uses; and

---

1. Nevertheless, a cellular service provider and local officials have a powerful incentive to confer regarding the available options for locating cellular telephone facilities in order to avoid costly and protracted litigation.

2. It will be consistent with the purposes of the comprehensive plan; and

3. It will be compatible with the orderly development of the town; and

4. It will be environmentally compatible with neighboring properties including a consideration of prospective impact on property values. In determining environmental compatibility, the board may require and consider, but not be limited to, evidence presented by the applicant on the following factors: soil erosion, water supply protection, highway limitations, traffic circulation, noise and safety.

Richmond Zoning Code, § 18.52.010 C.

Under Rhode Island law, an applicant bears the burden of demonstrating to the Zoning Board that it is entitled to a special use permit or a variance. *See DiIorio v. Zoning Bd. of Review*, 105 R.I. 357, 362, 252 A.2d 350 (1969). Here, the Board determined that the proposed tower failed to satisfy any of the ordinance's four requirements. More specifically, the Board found that:

[T]here is insufficient evidence in the record to support a legal conclusion that the proposed tower installation is compatible with neighboring uses. . . .

[T]he installation of a tower [i]s not consistent with the Town's comprehensive plan. . . .

[T]he Board cannot conclude from the record that granting the special use permit would be compatible with the orderly development of the Town. . . .

[T]he weight of evidence is against a finding that the proposed tower installation will be environmentally compatible.

Defs.' Ex. 4 at 4–7.

A. *Compatibility with Neighboring Uses*

The record shows that the site was located in a sparsely populated area and was surrounded by property zoned for residential use. Both sides presented "expert" witnesses who expressed conflicting and somewhat conclusory opinions regarding the tower's compatibility with neighboring uses.

In addition, several neighbors testified that the proposed tower would mar the scenic views that they enjoyed from their homes. Given the height of the proposed tower, the residential character of the surrounding land, and the relative dearth of evidence that the tower would be compatible with neighboring uses, there was ample reason for the Board to conclude that this requirement had not been satisfied.

B. *Consistency with Purposes of Comprehensive Plan*

In finding that the Plaintiffs had failed to establish that the proposed tower would be consistent with Richmond's "comprehensive plan," the Board relied heavily on the testimony of Ivo Stockar, the Assistant Director of Planning for the City of Warwick. Stockar expressed the opinion that the proposed tower would be inconsistent with the comprehensive plan, and he explained why.

The only other evidence on the subject consisted of opinions expressed by Peter Scotti, a real estate broker and appraiser, that the tower would not be inconsistent with the Plan, and by Michael Lenihan, another real estate broker and appraiser, engaged by opponents of the proposal, who agreed with Stockar. In light of the split of opinion between the realtors and Stockar's more germane qualifications as a planner, the Board's acceptance of Stockar's opinion is easily justified.

C. *Compatibility with Orderly Development of Town*

Since the surrounding property was residential; the Comprehensive Plan for future development contemplated that the area would remain one of "single family houses in a rural setting involving the presence of woods, open fields, scenic vistas and the proximity of an historic vil-

lage;" Defs.' Ex. 4 at 6; and the plaintiffs failed to present sufficient evidence on the subject; it was reasonable for the Board to conclude that granting the special use permit would "not be compatible with the orderly development of the town." Defs.' Ex. 4 at 6.

### D. Environmental Compatibility

The Board acknowledged that the proposed tower satisfied soil erosion, water supply protection, highway impact, traffic circulation, noise and safety components of the environmental compatibility requirement. Defs. Ex. 4 at 6. However, the Board found that the "weight of the evidence" was that it would have an adverse impact on surrounding property values. *Id.*

In reaching that conclusion, the Board gave more weight to the testimony of Lenihan, the objectors' expert, than it did to Scotti, the plaintiffs' expert. The plaintiffs argue, in effect, that the Board was required to accept Scotti's testimony because it was based on a study that Scotti conducted regarding the effect of communications towers on property values in other communities. However, as already noted, a factfinder is not obliged to accept the testimony of any witness; and since it had the opportunity to observe the witnesses *viva voce*, its judgment regarding credibility is entitled to considerable deference. That is especially true where the witness' testimony is controverted. Since Lenihan was well qualified in the field, expressed a contrary opinion, and pointed out what he considered to be flaws in Scotti's study, it was perfectly reasonable for the Board to attach greater weight to his testimony.

In short, the record amply supports the Board's conclusion that the plaintiffs failed to establish that the proposed tower satisfied any of the requirements for obtaining a special use permit that are enumerated in § 18.52.010. In fact, the clear weight of the evidence supports the Board's findings that the tower would not be compatible with Richmond's Comprehensive Plan.

Accordingly, the Board's denial of SNET's application for a special use permit did not violate either § 332(c)(7)(B)(iii) of the TCA or Rhode Island law. In light of that denial, there is no need to consider whether a variance would be required to exceed the thirty-five foot height restriction.

### II. The Prohibition of Services Claim

The plaintiffs claim that the Zoning Board's denial of their application, combined with the amendments to the Zoning Ordinance, violates Subsection 332(c)(7)(B)(i)(II) of the TCA because it "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services."

■ Short of a provision that expressly bans wireless communications facilities or establishes criteria that no one could satisfy, there is no bright line test for determining whether local regulation prohibits or has the effect of prohibiting wireless services. Here, too, the TCA seeks to strike a compromise between a carrier's desire to construct facilities that provide the maximum coverage at minimum cost and a municipality's desire to minimize any adverse impact that such facilities may have on the local community. *See Omnipoint Communications,* 173 F.3d at 14.

Deciding precisely where to strike the balance between the competing interests requires a fact-intensive inquiry that depends upon the circumstances of each case. Moreover, in determining whether an appropriate balance has been struck, a reviewing court must bear in mind that, because Congress has reserved a considerable measure of discretion to the local communities, the carrier bears a "heavy burden" of showing "from language or circumstances not just that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Id.*

■ In this case, based upon the record compiled thus far, the Court cannot say, as a matter of law, that SNET will be unable to sustain that burden. This is not surprising because, as already indicated, much of the evidence required to resolve the issue is beyond the scope of a zoning board hearing; and, in any event, a local board is not the appropriate forum for determining when federal limitations on the exercise of state regulatory authority have been exceeded.

In their motion for summary judgment, the defendants rely on testimony by one of SNET's own witnesses that the company already meets FCC coverage requirements and that SNET could satisfy any additional coverage needs by building several smaller towers instead of the proposed 190–foot tower on Shannock Hill. The defendants also point to other sites where they say that even the amended Zoning Ordinance would permit a 190–foot tower to be located.

SNET, on the other hand, has submitted an affidavit by its operations manager stating that SNET's coverage in the Richmond area no longer meets recently revised FCC requirements. SNET also has submitted drawings and maps purporting to show that none of the alternative sites identified by the defendants would provide adequate service and that some of them are unlikely to be approved, anyway. These submissions raise disputed factual issues that cannot be resolved in a motion for summary judgment. In fact, given the fact-intensive nature of the inquiry, it is difficult to see how summary judgment could be an appropriate vehicle for resolving effective prohibition claims in favor of either side except in the rarest of circumstances.

### III. The Untimeliness Claim

■ SNET claims that the Board did not act on its application "within a reasonable period of time" as required by subsection 332(c)(7)(B)(ii) of the TCA because their application was filed on July 2, 1996,

and the Board's decision was not rendered until October 2, 1997, fifteen months later.

However, by requiring action within a reasonable period of time, Congress did not intend to create arbitrary time tables that force local authorities to make hasty and ill-considered decisions. *See Sprint Spectrum, L.P. v. Medina,* 924 F.Supp. 1036, 1040 (W.D.Wash.1996). On the contrary, the TCA expressly provides that calculation of "a reasonable period of time" should "[t]ake into account the nature and scope of [the] request." § 332(c)(7)(B)(ii). Moreover, the legislative history of the TCA makes its clear that "[i]t is not the intent of this provision to give preferential treatment to the personal wireless service industry in the processing of requests, or to subject their request to any but the generally applicable time frames for zoning decision." H.R. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 208 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 223.

The uncontroverted affidavit of Mary Morgan, the ZBR's clerk, states that the Richmond Zoning Board, like most ZBRs, consists of unpaid volunteers. *See* Defs.' Ex. 3. It further states that the Board ordinarily meets once a month and considers applications in the order in which they are filed. *Id.* SNET's application was filed shortly after another application to erect a communications tower (the "Hammersmith" proposal).

As already noted, hearings on the Hammersmith proposal already had been scheduled for the Board's July meeting and hearings on SNET's application were postponed several times due to the protracted nature of the Hammersmith hearings and for a variety of other reasons including a request by SNET's counsel for a continuance. However, in an apparent effort to expedite matters, the Board supplemented its monthly meetings with eight special meetings devoted entirely to hearings on the plaintiffs' application, while continuing to hear other matters at its regularly-scheduled meetings.

Despite that accommodation, SNET charges that the Board was dilatory because it ended those hearings at 10 p.m.; it did not meet on weekends; and it continued to conduct other business at its regularly scheduled monthly meetings. In short, SNET goes beyond complaining about a lack of preferential treatment to which Congress has said that it is not entitled. It complains, in effect, that the preferential treatment that it did receive was not preferential enough. That argument fails, as a matter of law.

### Conclusion

For all the foregoing reasons, the defendants' motion for summary judgment is granted with respect to the claims that there was no substantial evidence to support the Board's decision and that the defendants did not consider SNET"s application within a reasonable period of time, and denied with respect to the claim that the defendants effectively have prohibited the placement of cellular communications towers in Richmond.

IT IS SO ORDERED,