OPINION OF THE COURT
William F. O’Brien, III, J.
Petitioners instituted this combined CPLR article 78 proceeding and action for a declaratory judgment seeking to compel acceptance of their application for site plan approval to build a 125-foot monopole wireless communications tower at a site located on Hubbard Hill Road in the Town of Maryland, New York. The petition/complaint also seeks a declaration that Local Law No. 1 (2001) of the Town of Maryland (Local Law No. 1-2001), as passed by the Town Board of the Town of Maryland on April 5, 2001, is invalid.
Procedural History
The instant petition was filed with the Otsego County Clerk on May 7, 2001. An index number was assigned and the case was placed on the court’s June 22, 2001 motion term calendar. The motion hearing date was then adjourned to August 3, 2001, by agreement of the parties, in order to allow time for submission of papers. The parties then instituted a 90-day stay of all proceedings in the case by court-approved, written stipulation dated July 17, 2001. By letter dated October 17, 2001, petitioners’ counsel notified the court that the parties had not resolved the matter and requested a scheduling conference. A scheduling conference and oral argument on the petition/complaint was held on October 24, 2001, at which time a timetable for submission of memoranda was established. The final submission to the court, petitioners’ reply memorandum of law, was received on December 21, 2001.
Statement of Facts
Petitioner Independent Wireless One Corporation (hereinafter IWO or collectively petitioners) is the network manager for *170 Sprint Spectrum, L.P. and Wireless Co. L.P., the providers of Sprint PCS wireless communications. In this role, IWO is responsible for development, operation and maintenance of the Sprint PCS network in a five-state area generally described as upstate New York, New Hampshire (excluding Nashua), western Massachussetts, Vermont and northern Pennsylvania. As part of these responsibilities, IWO’s affiliated corporation, Independent Wireless One Leased Realty Corporation, owns and manages all of Sprint’s real property interests.
The PCS system operated by petitioner IWO uses a digital signal, as opposed to the analog signal used by other providers of cellular wireless communication service. The digital signal operates by transmitting a very low power, high frequency signal between the telephone and an antenna mounted on a tower, pole or other tall structure. The signal is transmitted through the antenna to an equipment container, which combined, form a “base station” and in turn connect the signal to an ordinary telephone line and routes the signal accordingly. The distance from the antenna to the site of the wireless telephone, referred to by petitioners as the service area, is limited to a relatively small area because of the low power of the system. This necessitates the establishment of a continuous, interconnected series of base station sites to ensure that PCS customers will be able to maintain the signal throughout the duration of their call.
Petitioners are currently in the process of attempting to establish reliable PCS service along the Interstate Highway 88 (1-88) corridor, which passes through the Town of Maryland. Petitioners determined that construction of a base station in the Town of Maryland is necessary to remedy an existing coverage gap that extends for approximately seven miles along 1-88. Petitioners undertook a study of potential base station sites within the Town and determined that a 125-foot high monopole tower placed upon the land of John and Amy Williams on Hubbard Hill Road (Hubbard Hill site) would best serve to remedy the existing coverage gap.
The administrative record indicates that petitioners’ representative, Ronald Brunozzi, first made oral presentation to respondent Planning Board of the intended site plan application for the Hubbard Hill site at the Planning Board’s October 12, 2000 meeting. Petitioners submitted an initial written application for site plan approval on November 9, 2000. Petitioners’ application, presented by its representative Brunozzi and Mary Elizabeth Slevin, Esq., consisted of building permit and special *171 use permit applications, an 11-page written project summary, radio frequency (RF) propagation maps showing the coverage provided by siting at Hubbard Hill site as well as two existing facilities (a 50-foot water tank in the Town of Schenevus, located about five miles northeast of the Hubbard Hill site, and an existing 190-foot high tower operated by Cellular One), photo simulations of the visual impact of the proposed tower from several vantage points along State Route 7, and a Full Environmental Assessment Form (FEAF) as required under the New York State Environmental Quality Review Act (SEQRA). Among the concerns about petitioners’ proposal expressed by public citizens and Planning Board members were the effects of the RF emissions on humans and livestock in the area of the Hubbard Hill site, the proposed setbacks and fall zones for the tower, answers to several questions in the FEAF submitted by petitioners, and the necessity of an independent engineering study to fully evaluate the propriety of siting a tower at the Hubbard Hill site. Consideration of petitioners’ application was held over until the next regularly scheduled Planning Board meeting in light of the questions presented.
Respondent Planning Board met again on December 14, 2000, and petitioners once again appeared at the meeting by representative Brunozzi and attorney Slevin. Petitioners presented an updated site plan showing increased tower setbacks which placed the tower at least 500 feet from the closest buildings, additional signal propagation studies, RF field calculations from a specialist and citations to relevant provisions of the Federal Telecommunications Act of 1996. Respondent Planning Board reviewed the submissions and heard comment from members and public citizens addressing, among other things: (1) why petitioners’ photo simulations showed only the tower and not the base facility and did not include simulations from the vantage point of adjacent properties, (2) whether petitioners’ lease for the proposed site would prevent future colocation of antennae, and (3) whether the Hubbard Hill site conformed with the requirement of Local Law No. 2 (2000) of the Town of Maryland (Local Law No. 2-2000) that towers be sited to have the least practical adverse effect on the environment. Respondent Planning Board concluded that a site inspection was necessary and set December 16, 2000 as the date for the site inspection. It was further notified that a private engineering firm had been contacted to analyze petitioners’ site plan. Also at the December 14, 2000 meeting, a representative of Crown Atlantic Co., LLC orally presented materials for a proposed *172 180-foot telecommunications tower on a site approximately two miles from the Hubbard Hill site. No formal application was presented by Crown.
Respondent Planning Board conducted a site inspection of the Hubbard Hill site on December 16, 2000, and representative Jay Suriano attended on behalf of petitioners. Upon arrival at the proposed tower location, the site had not been surveyed and staked to show the revised setback distances of 125 feet. A question was also raised about the distance from the site to State Route 7, because if that distance was less than 500 feet, petitioners’ application would have to be submitted to the Otsego County Planning Board for review. Further discussion was had regarding whether the most appropriate site for a telecommunications tower was across the valley on the opposite (southeast) side of 1-88. Respondent Planning Board took no action other than to request that petitioners have the site resurveyed so as to show the tentative new setback distances.
Respondent Planning Board met again on January 11, 2001, with representative Brunozzi and attorney Slevin attending on behalf of petitioners. Attorney Slevin presented updated propagation studies of the coverage resulting from placement of base stations at the proposed Crown site at Cooperstown Junction, New York, and on the Schenevus water tank site which showed two small coverage gaps. Attorney Slevin also presented a description of the technology used by petitioners and requested that respondent Planning Board hold a public hearing on the application at its earliest convenience. Planning Board Chairperson Dorothy Scott Fielder noted that a public hearing could not be held until: (1) the resurvey and reinspection of the site was completed, (2) the distance from the site to State Route 7 was established, and (3) the results of the private engineering study were reviewed by the Board. Respondent Planning Board unanimously voted to submit the application materials to its retained engineer for review and to require at least 175-foot setbacks at the Hubbard Hill site. Respondent Planning Board also set a date of February 3, 2001 for another inspection of the Hubbard Hill site, unless the resurvey could not be completed before that date, and for a site inspection of the Cooperstown Junction site proposed by Crown.
Respondent Planning Board held its second inspection of the Hubbard Hill site as scheduled on February 3, 2001, with representative Suriano attending for petitioners and Francois Vedier of Lamont Engineers attending as the engineer retained *173 by the Planning Board. The Planning Board met first at the Schenevus firehouse to initiate the meeting and chose to once again postpone the Cooperstown Junction site visit because of concerns over site access. Once at the Hubbard Hill site, it was noted that the revised 175-foot setbacks had been marked along with the location of the proposed monopole tower. Questions were raised regarding the number of trees to be cut from the site and the viability of planting replacement trees. Engineer Vedier reviewed the scope of the services he would provide to respondent Planning Board and indicated that an interim report would be forthcoming prior to the scheduled February 8, 2001 Planning Board meeting.
The February 8, 2001 meeting of respondent Planning Board was attended by, among others, engineer Vedier as engineer for respondent Planning Board, and representative Suriano and attorney Slevin for petitioners. Engineer Vedier delivered an interim report on his impressions of petitioners’ application, which raised the following issues, among others: (1) the application did not include space, grading or fencing required for five equipment sheds, (2) the tower location needed to be moved so that the setback line did not intersect with Hubbard Hill Road, (3) a plan for evergreen screening of the facility needed to be provided, (4) a grading plan was needed for the access road to the tower and parking area, and (5) the application needed to include plans for an eight-foot high fence around the facility. Later in the meeting, respondent Planning Board voted affirmatively to recommend to the Town Board that the Town adopt a six-month moratorium on consideration of applications for the construction of telecommunications towers. Respondent Planning Board also voted to recommend to the Town Board the creation of a committee to consider alternative sites consisting of three community members and two Planning Board members.
Respondent Planning Board’s recommendation that the Town adopt a six-month moratorium on all telecommunication tower applications was considered and rejected by respondent Town Board at the Town Board’s February 15, 2001 meeting. Respondent Town Board did approve the creation of a committee, consisting of two Planning Board members and three community citizens, “to work with Mary Elizabeth Slevin on changing our local law on cell towers.”
The newly created committee was scheduled to hold its first meeting on February 22, 2001. However, the day before the scheduled meeting, attorney Slevin was contacted by commit *174 tee Chairperson Gary Woodrow and told that the meeting was canceled and that petitioners were not welcome to participate in the new committee’s meetings. The committee convened for the first time on March 1, 2001,[1] and targeted several subjects of Local Law No. 2-2000 for review, including setback distances, tower heights and screening considerations.
On March 7, 2001, attorney Slevin supplied additional information to Planning Board Chairperson Fielder, as well as engineer Vedier, which responded to the issues raised by engineer Vedier at the previous Planning Board meeting. The next day she appeared with representatives Brunozzi and Suri-ano on behalf of petitioners at respondent Planning Board’s meeting, asserted the position that petitioners had completed the application for site plan approval and requested that respondent Planning Board deem the application complete and schedule a public hearing on the matter. Engineer Vedier stated that he had reviewed petitioners’ submissions of March 7th and that the information satisfied respondent Planning Board’s requests. Respondent Planning Board concluded that since only Chairperson Fielder had seen petitioners’ newly submitted materials, more time was needed for the rest of the Board to review the materials and determine whether petitioners’ application was indeed complete. Respondent Planning Board also approved a motion to retain, at petitioners’ cost, an RF engineer in addition to engineer Vedier, to consult with “the site committee.” At the same meeting, the Planning Board members who were also part of the telecommunications tower law revision committee reported that they were nearly finished with their task.
In fact, the revision committee met the next night, March 9, 2001, and again on March 13, 2001. The committee finalized its recommendations at the March 13th meeting and resolved to notify the Town Board of their readiness to present a draft of the new law to respondent Planning Board. Committee member Mark Lo Buglio presented the draft at respondent Town Board’s March 15, 2001 meeting, along with County Planner Dianne Carlton and attorney Peter Doherty. Planning Board Chairperson Fielder recommended that the Town continue to reject petitioners’ application as incomplete rather than rejecting the application based upon the proposed changes to the local tower law. Respondent Town Board voted to accept *175 the draft of the new law, subject to revisions by respondent Planning Board, and to hold a public hearing on the new law on April 5, 2001.
Respondent Planning Board met on March 29, 2001 for the solitary and specific purpose of reviewing the draft of the proposed amendments to Local Law No. 2-2000. The Board made several minor revisions to the draft before settling on a final draft to send to respondent Town Board for consideration at the April 5th public hearing. The most significant changes made to the provisions of the existing local law regulating telecommunications facilities were: (1) an increase in setback requirements to a minimum of 200 feet and new regulations prohibiting the siting of telecommunications facilities within 1,000 feet of any residence or farm building, and (2) new restrictions on tower heights making the maximum height of a noncolocated tower (one which contains only one provider’s antenna) 35 feet and the maximum height for colocated towers 125 feet, depending on the number of colocated antennae. Both of these changes would effectively foreclose any possibility that petitioners’ application to site a facility at the Hubbard Hill site would be approved.
Planning Board Chairperson Fielder appeared at the April 5th public hearing, presented the draft of the proposed Local Law No. 1-2001 to respondent Town Board, and expressed her opposition to passage of the proposed new law. Chairperson Fielder cited a desire to work with petitioners under the terms of Local Law No. 2-2000 and her belief that an appropriate resolution to the problems presented at the Hubbard Hill site could be reached without hasty passage of Local Law No. 1-2001. County Planner Carlton also appeared and expressed her opinion that Local Law No. 1-2001 represented “one of the strongest laws she’s seen among other towns.” Following completion of the public hearing, respondent Town Board voted unanimously to adopt Local Law No. 1-2001.
Subsequently, when attorney Slevin appeared at the April 12, 2001 meeting of respondent Planning Board to request a vote on acceptance of petitioners’ site plan application, respondent Planning Board determined that it could not accept petitioners’ application as complete because the application did not comply with the requirements of the newly adopted Local Law No. 1-2001.
Relevant Law/Analysis
Claims Regarding the Validity of Local Law No. 1-2001
*176 Petitioners recite several procedural and substantive defects in arguing that Local Law No. 1-2001 should be declared invalid, including the contention that respondent Town Board failed to refer the proposed law as required by General Municipal Law § 239-m. That statute mandates the referral of proposed municipal zoning laws or amendments to existing municipal zoning laws to the appropriate county planning agency or regional planning council for review prior to enactment. Respondents concede that Local Law No. 1-2001 was not referred to the Otsego County Planning Board. However, they argue that referral was not required because Local Law No. 1-2001 was not a zoning law, but was legislation enacted pursuant to the Town’s police power as enumerated in Municipal Home Rule Law § 10. In support of this position, respondents cite the Third Department case of Matter of Pete Drown Inc. v Town of Ellenburg (188 AD2d 850 [3d Dept 1993] ).[2]
Respondents’ reliance upon the Drown ruling is misplaced. In that case, the Appellate Division determined that a law regulating waste disposal was not a zoning law but was a lawful exercise of a municipality’s police power under Municipal Home Rule Law § 10. (Drown v Town of Ellenburg, supra at 852.) Specifically, the Court examined the “Intent” section of the law, which cited the reason of protecting the public from potential health hazards as the law’s primary goal. Similar exercises of municipal legislative action have also been determined appropriate under the police power provision of Municipal Home Rule Law § 10. (See Niagara Recycling v Town of Niagara, 83 AD2d 316 [4th Dept 1981].)
Respondents urge a reading of Local Law No. 1-2001 that represents a similar exercise of municipal police power and is therefore not a zoning law for the purposes of the referral requirement in General Municipal Law § 239-m. This analogy is flawed. There is a clear distinction between the regulation of waste disposal and the regulation of telecommunications towers for purposes of delineating the boundaries of municipal police power. The Drown Court based its holding on the fact that waste products and their disposal can present significant public hazards and that the law in that case was designed to do no more than safeguard the public. (Drown v Town of Ellenburg, supra at 852.) However, the intent and effect of Local Law No. *177 1-2001 is consistent with that of a zoning law in that it regulates, among other things, setback distances, tower heights and the aesthetic impact of telecommunications towers. (See Salkin, New York Zoning Practice, ch 7 [4th ed 2000].) By its own language and content, Local Law No. 1-2001 must be construed as a zoning law, regardless of its enabling authority. To hold otherwise would allow municipalities to circumvent General Municipal Law § 239-m’s referral requirement by simply invoking Municipal Home Rule Law § 10 as the basis for any legislation, regardless of intent, purpose or effect, thus rendering General Municipal Law § 239-m superfluous. Accordingly, since respondent Town Board failed to refer Local Law No. 1-2001 to the Otsego County Planning Board prior to enactment as required by General Municipal Law § 239-m, the law is invalid.
Based upon the foregoing conclusion, it is not necessary to reach any of petitioners’ other procedural and substantive challenges to Local Law No. 1-2001.
Claims that Respondents Illegally Delayed Decision on Petitioners’ Site Plan Application
Petitioners must also be granted relief insofar as they contend that respondent Planning Board improperly delayed proper review of the application for site plan approval for the Hubbard Hill site.
The Federal Telecommunications Act of 1996 provides that decisions regarding the placement of personal wireless facilities such as the one proposed by petitioners are to be governed by the prevailing local zoning laws, providing that such laws do not have the effect of unreasonably discriminating between service providers or prohibiting the provision of personal wireless services. (Sprint Spectrum v Willoth, 176 F3d 630, 638 [2d Cir 2000].) The Act does, however, require that local governments must act on a request for authorization to construct a telecommunication facility within a reasonable period of time after the request is properly made, taking into account the nature and scope of the request. (47 USC § 332 [c] [7] [B] [ii]; Cellular Tel. Co. v Town of Oyster Bay, 166 F3d 490, 493 [2d Cir 1999].)
Respondent Planning Board’s actions pertaining to if and when petitioners’ application was complete were governed by the provisions of Local Law No. 2-2000, which was enacted as the “Town of Maryland Telecommunication Tower Law” in October of 2000. Under the provisions of this statute, petitioners were required to submit a site plan as described in article *178 VII of the Town of Maryland Zoning Ordinance, as well as complying with several items of information “required specifically for telecommunication facilities.” The Town Zoning Ordinance states only that the application must include nine copies of a proposed site plan and any related information and that an Environmental Assessment Form (EAF) must also be included.
Local Law No. 2-2000 additionally requires that proposed site plans show all existing and proposed structures and improvements, including roads, and that grading plans must be submitted for all new facilities and roads. The site plan also must include a statement of intent and capacity for use as well as justification for the height of any tower and for any clearing of vegetation required. Site search ring analyses must be submitted documenting the scope of an applicant’s search for existing structures that could satisfy their needs and a statement of the rationale behind their site choice. Local Law No. 2-2000 further mandates the filing of a visual EAF and landscaping plan, along with photo simulations of the proposed facility from affected residences and public rights of way. The statute requires that applicants provide a certification from a qualified, licensed engineer certifying that the proposed facility meets applicable structural safety standards and will not interfere with local radio and/or television signals. Finally, Local Law No. 2-2000 states that applicants must provide a written statement of intent to remove a tower or antennae if the facility becomes obsolete or ceases to be used for its intended purpose for a specified period of time and requires the applicant to post a bond to ensure maintenance of the facility and removal, if necessary.
Based upon the present administrative record, petitioners had provided information sufficient to satisfy the elements of a site plan application set forth in Local Law No. 2-2000 and the Town of Maryland Zoning Ordinance by the March 8, 2001 meeting of respondent Planning Board. In fact, respondent’s own consultant, engineer Vedier, conceded at the March 8th meeting that petitioners’ submission of March 7th had “addressed all (the Board) had asked for” and that no more outstanding items needed to be submitted. Engineer Vedier’s letters to respondent Planning Board, dated March 16, 2001 and March 27, 2001, further support the conclusion that petitioners had submitted all materials necessary for compliance with the statute. Particularly compelling is this statement in engineer Vedier’s March 27th letter:
*179 “The SEQR process need not be completed before the Planning Board can accept the application for a Special Permit. The action, for purpose of SEQR, is the construction of the communications tower, not the acceptance of the application as complete. The Planning Board does not have to issue a negative declaration before accepting the application as complete.”
While stopping short of declaring that petitioners’ application was complete on the date of writing, engineer Vedier’s letter exemplifies the distinction between petitioners’ responsibility to submit the materials necessary to complete the application and petitioners’ obligation to produce evidence sufficient to support approval of the application. Although questions regarding the environmental impact of petitioners’ project may have still existed at the March 8th meeting, it was not necessary to answer those questions in order to deem petitioners’ application complete at the March 8th meeting.
Even assuming, for the sake of argument, that it was reasonable for respondent Planning Board to delay consideration of the application until all Board members had adequate time to review the materials presented to Chairperson Fielder and engineer Vedier on March 7th, and to the rest of the Board on March 8th, it was not reasonable for respondent to fail to address the application prior to the public hearing on Local Law No. 1-2001 on April 5th. Members of respondent Planning Board attended two meetings of the revision committee during this time period and held a special meeting of the entire Board on March 29th to produce a final copy of Local Law No. 1-2001 for the April 5th public hearing. Thus, Board members certainly had adequate time to review the materials provided by petitioners to determine if the application was in fact complete on March 8th. While respondent Planning Board was not required to give petitioners’ application preferential treatment (see SNET Cellular v Angell, 99 F Supp 2d 190, 194 [D RI 1999]), it was required to take prompt action in reviewing the application materials. (Sprint Spectrum v Town of W. Seneca, 172 Misc 2d 287, 290 [Sup Ct, Erie County 1997].) Moreover, even allowing that respondent Planning Board acted properly in failing to consider petitioners’ application until its next regularly scheduled meeting on April 12, 2001, the foregoing decision invalidating Local Law No. 1-2001 (the Board’s grounds for deeming the application incomplete on that date) necessitates consideration of the application under the stan *180 dards of Local Law No. 2-2000, which requirements petitioners had certainly met by the April 12th meeting.
Conclusion
It must be noted that petitioners’ request for an order not only deeming the site plan application complete, but approving the site plan and compelling the issuance of a building permit, is presently premature. Based upon the current record, significant questions remain about the viability of the proposed tower that must be addressed by respondent Planning Board. The record here is not clear that petitioners’ proposed tower will result in a “minimal intrusion to the community,” so the proper course is to allow the local municipality to first complete its SEQRA review of the Hubbard Hill site plan and obtain input from the County Planning Board and then render its decision on the application. (See Sprint Spectrum v Zoning Bd. of Appeals of Town of Guilderland, 173 Misc 2d 874, 877 [Sup Ct, Albany County 1997].)
For the aforementioned reasons, Local Law No. 1-2001 of the Town of Maryland is declared invalid, petitioners’ application for site plan approval to construct a telecommunication facility on the Hubbard Hill site is declared complete and the matter of review of said application is remanded to the Town of Maryland Planning Board for consideration consistent with the provisions of the Town of Maryland Zoning Ordinance and Local Law No. 2-2000 of the Town of Maryland.

. The minutes of the committee’s first meeting bear a date of February 1, 2001. This date appears to be a typographical error as the committee had yet to be created by the Town Board on February 1.

. It is noteworthy that petitioners, in attempting to reply to respondents’ argument on this case, mistakenly discuss a subsequent Appellate Division decision on the Drown case, which is found at 229 AD2d 877 (3d Dept 1997).