DECISION
Before this Court is an appeal from a decision of the Town of Exeter Zoning Board of Review (Board), which denied the dimensional variances sought by Richard and Jean Siciliano (Appellants). The Appellants seek a reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The lot in question is located on East Shore Drive in the Boone Lake area of the Town of Exeter, Rhode Island, otherwise identified as Assessor's Plat 83, Block 10, Lots Nos. 7 and 8. The lots were two abutting, yet legally separate lots when purchased. The Appellants purchased Lot 7 in 1969, which is the site of the Appellants' residence. The Appellants purchased Lot 8 in 1983, which, when purchased, had a "screen house" on the property, which was torn down in approximately 2000.[1] There has been no other structure built on Lot 8 since. *Page 2 
In 1977, pursuant to the Zoning Enabling Act, Exeter implemented The Land Use Ordinance of Exeter (Zoning Ordinance), which categorized the Appellants' lots as RE-2, requiring a minimum lot area of two acres.See §§ 45-24-27 through-72. (Zoning Enabling Act); Zoning Ordinance § 2.4.2.[2] Lot 7 is 8,550 square feet in dimension and Lot 8 is 10,012 square feet in dimension, and thus, both were legal non-conforming lots under the RE-2 area requirement. Subsequent to the Appellants' purchase of the lots, the Town of Exeter added a merger provision to its zoning ordinance, pursuant to § 45-24-38, which states that if "two or more abutting nonconforming lots are held in the same ownership at any time after May 2, 1977, such lots shall be combined for the purpose of this Ordinance in order to conform or more nearly conform to any of the dimensional requirements of this Ordinance for the district in which the lots are located, and such lots shall not be sold separately." See Zoning Ordinance § 3.5.2. Because Lots 7 and 8 were abutting nonconforming lots by dimension and were in common ownership, they merged by operation of law.[3] Thereafter, the Appellants sought a building permit for a 32 foot by 36 foot two story residence for their son on Lot 8. At that time, the Appellants learned that their two parcels had been merged and that they would need both subdivision and variance relief in order to build on Lot 8. Mr. Siciliano testified that, at this time, he had already obtained Department of Environmental Management (D.E.M.) and wetlands permits to build on Lot 8.
In 2002, the Appellants applied to the Town of Exeter Planning Board (Planning Board) for a minor subdivision. The Planning Board denied the Appellants' request for subdivision. The denial was appealed to the Zoning Board sitting as Board of Appeals, which also denied the *Page 3 
Appellants' appeal. An appeal from the Town of Exeter Zoning Board's (Zoning Board) denial was then filed with this Court. This Court held that the record of the Planning Board was insufficient and, therefore, remanded the decision back to the Planning Board. Siciliano v. Town ofExeter Zoning Board of Review, 2006 WL 557148 *1, *4 (Mar. 2, 2006).
On remand, the Planning Board granted conditional preliminary approval of the subdivision subject to receipt of the necessary dimensional variances from the Zoning Board. The Appellants then filed an application for dimensional variances to the Zoning Board. The Appellants requested the following variances: 1.7 acres of acreage relief, 125 feet of road frontage relief, 18 feet of front set back relief, 15 feet of easterly side set back relief, and 2 feet of westerly side set back relief. The Zoning Board denied the requested variances and the Appellants appealed this decision to the Zoning Board sitting as the Zoning Board of Review (Board). The Board conducted a public hearing on January 11, 2007, at which time the appeal was considered.
At the hearing, the Appellants produced testimony of Peter Suorsa, [4] of the Coventry Survey Company, who testified regarding the proposed structure, the variances which would be necessitated and the environmental studies of the subject lots. Suorsa testified as to the feasibility of leaching chambers for waste water with respect to nearby wells, the relocation of the Appellants' existing well, D.E.M. and I.S.D.S. (Individual Sewage Disposal System) approvals, as well as wetland, water table and drainage tests of the lots. Paul Piscerne, Chairman of the Conservation Commission, testified at the hearing against Appellants' application. He stated that the integrity of Boone Lake was in jeopardy due to decreasing water quality caused by development along the Lake. Piscerne also questioned whether the state would approve of a *Page 4 
"dug well" and stated that tearing down the "screen house" constituted an abandonment of use. The Appellants' testimony at the hearing consisted only of confirming facts put forth by their attorney. They also introduced tax statements for the property.
After the hearing, the Board voted five to zero to deny the Appellants' appeal. Thereafter, the Board enumerated its findings of fact and the following conclusions:
 1.) That the prerequisites to relief established by the provisions of Article II, § 3.5.3.B of the Exeter Zoning Ordinance. . .are mandatory and deprive the board of discretion to grant the application as presented;[5]
 2.) Even if the Board had the discretion to grant the application;
 a. the hardship from which the applicants seek relief results from the prior action of the applicants in the subdivision of the property; and
 b. the granting of the requested variance would impair the intent and purpose of the Zoning Ordinance and the Exeter Comprehensive Plan in creating two lots further in deviation from the dimensional requirements of the zone in which they are located.
 STANDARD OF REVIEW
Section 45-24-69 confers jurisdiction on the Superior Court to review the decision of a zoning board. The Superior Court's review of a zoning board's decision is governed by § 45-24-69(d) which provides in relevant part: *Page 5 
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of appellant have been prejudiced because of findings, inferences, confusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the Zoning Board of Review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion
"It is the function of the Superior Court to examine the entire record to determine whether `substantial evidence' exists to support the board's findings." Mill Realty Assoc. v. Crowe, 841 A.2d 668, 672 (R.I. 2004). The Court has defined substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion" and as an "amount more than a scintilla but less than a preponderance" of evidence. Lischio v. Zoning Bd. of Review NorthKingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
 ANALYSIS
The parties' arguments may be briefly summarized. The Appellants argue that the Board's conclusions ignore the definition and purpose of a variance. They argue that requiring a party to meet all dimensional requirements for the zone in order to qualify for a dimensional *Page 6 
variance, under § 3.5.3B of the Zoning Ordinance, is contrary to a variance's purpose, which is to give permission to depart from the literal requirements of the Zoning Ordinance. The Appellants further argue that the hardship was caused by the Town's merger of the lots and was not that caused by any action by the Appellants, who had purchased the property with the intention of building on Lot 8. Lastly, the Appellants argue that the Board's conclusion that the variance would impair the intent and purpose of the Zoning Ordinance and Comprehensive Plan was improper because the Planning Board conditionally granted the subdivision and stated no objection to the requested variances.
The Board argues that there is substantial evidence on the record to support its conclusions. It argues that § 3.5.3B of the Zoning Ordinance expressly denies the Board discretion to grant a variance when a merged lot does not meet dimensional requirements of an RE-2 zone. Thus, the Board argues, if the Board had granted the variances, it would have been contrary to the Town's ordinance and reversible by this Court pursuant to § 45-24-69(d)(1)-(2).[6] The Board further asserts that the Appellants are not entitled to a dimensional variance because the Appellants created their own hardship by requesting that the lots be subdivided. Because of their request, they are precluded from finding relief pursuant to § 45-24-41(c), which is incorporated in Exeter Zoning Ordinance § 1.3E.C(2). The Board argues that there is substantial evidence to support the conclusion that the variances would impair the intent and purpose of the Zoning Ordinance and Comprehensive Plan. The Board states that the Appellants have failed to demonstrate hardship. And lastly, the Board argues that Appellants' arguments and emphasis on the Planning Board's decision, the timing of the purchase of the lots, and the Town's tax treatment of the property, are all irrelevant to the Board's determination. *Page 7 
After examination of the Board's record, this Court finds substantial evidence to support the Board's decision to deny the Appellants' variances. In seeking a variance, the burden of proof is on the applicant to demonstrate that the relief from the strict requirements of the Zoning Ordinance is warranted. See Ronald Chase, The Rhode IslandZoning Handbook § 152 Variances (2006); see e.g. Reynolds v. Zoning Bd.of Review, 96 R.I. 340, 191 A.2d 350; Dilorio v. Zoning Bd. ofReview, 105 R.I. 337, 252 A.2d 350 (1969); SNET Cellular Inc. v.Angell, 99 F. Supp.2d 190 (D. R.I. 2000). The Court will examine each of the Board's conclusions in turn.
The Prerequisites for Relief Were Not Satisfied Depriving the Board ofthe Discretion to Grant a Variance
The Court agrees with the Appellants' assertion that a variance is by its very definition, "permission to depart from the literal requirements" of the relevant ordinance. See Zoning Ordinance § 1.2.89 (defining variance). Yet, the Exeter Zoning Ordinance has set forth conditions which must be satisfied in order for the Board to be empowered to grant such a departure from the Ordinance when dealing with merged parcels of land. See Zoning Ordinance § 3.5.3 (requirements for granting a dimensional variance of a merged lot). The Rhode Island Supreme Court held, in Lindberg's, Inc. v. Zoning Bd. of Review of Cityof East Providence, that it "is settled that the standards set out in an ordinance prescribing conditions to be met, with respect to the grant of an exception prescribed therein, are conditions precedent to an exercise of the discretion of the board which must be satisfied prior to any affirmative action." 262 A.2d 628, 629 (R.I. 1970) (ordinance required as a condition precedent to grant exception to allow a gasoline station that the premises not be within 200 ft. of a church or cemetery, the proposed station did not meet this condition and thus the court held the board's granting an exception was an abuse of discretion); see alsoGuiberson v. Roman Catholic Bishop of Providence, *Page 8 308 A.2d 503, 507 (R.I. 1973) (The conditions precedent in the zoning ordinance must be met before the board's special exception comes into being.).
The Zoning Ordinance expressly sets forth in § 3.5.3 that a lot which has been created by merger of two or more non-conforming lots, as the Appellants lots were, the lot may be subdivided or combined with other lots and subdivided, provided that approval is given of the planning board and provided that the following requirements are met:
 A. In all zones, [in] which any portion of the lot is within the groundwater overlay protection of the district, all dimensional requirements for the zone, including without limitation are, frontage and lot width, shall be met.
 B. In the RE-2 zone, all dimensional requirements for the zone, including without limitation, area, frontage and lot width, shall be met.
 C. In all other residential zone districts all dimensional requirements for the zone, including without limitation, area, frontage and lot width, shall be met. (emphasis added)
The Ordinance thus requires as a condition precedent to the Board's power to grant a variance for merged nonconforming lots that the lots meet "all the dimensional requirements for the zone." Zoning Ordinance § 3.5.3B (emphasis added). Thus, the Court finds it is reasonable for the Board to conclude that they are without the authority to grant a variance to the Appellants where the Ordinance establishes that the lots meet the zoning requirements as a condition precedent.
Although the Appellants argue that it seems contrary to require a lot to meet the literal requirements of the Zoning Ordinance in order to be able to obtain a variance, the purpose behind these Ordinance requirements, in the narrow application to merged lots, is rational. Without such a requirement, all property owners, such as the Appellants, would be able to seek variances to undo merger and revert their property back into non-conforming lots. Permitting *Page 9 
such would be in direct contravention of the purpose of the merger provision. The Zoning Ordinance reflects a deliberate effort to prevent variances from being granted except when the lots, so subdivided, conform to the requirements of the zone. Although the Appellants' lot could not be subdivided into a lot which does conform to these requirements, this is not true for all subdivided merged lots. Therefore, the Court agrees with the Board's conclusion that the prerequisites for relief set forth in the ordinance are meant to be mandatory and accordingly, these prerequisites deprive the Board of discretion to grant an application when they are not satisfied.
The Hardship is a Result of the Prior Action of the Applicants
The Rhode Island Supreme Court has held that in order for a Board of Review to grant a dimensional variance the applicant must satisfy the requirements of § 45-24-41(c), as well as § 45-24-41(d)(2). Lischio v.Zoning Bd. of Review of the Town of North Kingstown, 818 A.2d 685, 692
(R.I. 2003).[7] Satisfying the first part, § 45-24-41(c), requires that the hardship, from which relief is sought, "is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." Section 45-24-41(c)(2). The "self created hardship rule," as the provision is referred to, is also incorporated in *Page 10 
the Exeter Zoning Ordinance § 1.3.E(C).[8] The Board's conclusion, that the hardship from which the Appellants seek relief is a result of their prior action of subdividing the property, is supported by prior case law. In Sciacca v. Caruso, the Rhode Island Supreme Court stated that "an area variance may not be granted to the owner of a substandard lot where such lot was created by the deliberate conduct of the applicant. . . . An area variance may not be granted to solve the problem of an applicant who proposed to divide [her] property into two substandard parcels." 769 A.2d 578, 583 (R.I. 2001) (quoting Rozes v.Smith, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978)).[9] The court further stated that the self-created hardship rule applied to both "use" and "dimensional" variances. Id.
In Sciacca, the property owner Caruso owned one lot, which, like the Appellants' parcel, had been formed as a result of the Town of Johnston Zoning Ordinance provision which merged two adjacent, commonly owned, substandard lots into one. See id. at 579-80. The Court reasoned that Caruso's "prior action caused the planning board to subdivide her single-conforming lot into a two substandard-sized parcels, thereby creating the undersized lot in question. This prior action resulted in the self-created hardship she later used as the basis for her variance."Id. at 584. The Court further reasoned that the relief from the dimensional zoning requirements only became applicable because of her "subdivision of the property before the planning board." Id. Thus, the Court held that the trial justice had misapplied § 45-24-41(c), overlooked material evidence, and made findings that were clearly erroneous by affirming the *Page 11 
granting of the variance. Id. at 585. The Court emphasized in this decision that "to rule otherwise would allow Caruso and other similarlysituated owners to circumvent applicable zoning laws pertaining to thevalidity of merger provision like those in the town's zoning ordinance, as well as to evade the threshold showing of hardship that is required to obtain relief from their application though the granting of a dimensional variance." Id. (emphasis added). Here, the Appellants are similarly situated to the property owner in Sciacca and like her are seeking to circumvent the merger provision of the Exeter Zoning Ordinance by requesting a subdivision of their merged lot in order to revert their lot to the very same two non-conforming lots which existed prior to the merger. Thus, the Board was justified in concluding that Appellants are seeking dimensional relief variances for a hardship of their own creation.
In defense of the claim of self imposed hardship, the Appellants argue that the decision of the Planning Board is not final and is still conditional, therefore the hardship cannot be based on their actions since the lot has yet to be effectively subdivided. They argue instead that the hardship was created by the Town in passing the merger provision. The Rhode Island Supreme Court in Sciacca also addressed this very allegation. Id. at 585. The Court stated that
 "when an applicant requires both planning board approval and a variance from a local zoning ordinance to use his or her property in a certain manner, any planning board decision in favor of the applicant is conditional in nature and therefore does not relieve the zoning board from taking into account the self created hardship language." Id. (emphasis added).
Therefore, this Court finds that there is substantial evidence to support the Board's finding that the hardship from which the Appellants seek relief is caused by Appellants' prior action in attempting to subdivide their merged lot into two non-conforming lots from which they now seek dimensional relief. *Page 12 
 The Requested Variance Would Impair the Intent and Purpose of theZoning Ordinance and Exeter's Comprehensive Plan
Section 45-24-41(c)(3) and the Zoning Ordinance § 1.3.E(C)(2) both additionally require that the Board find that the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan of the Town. This Court finds that there is substantial evidence on the record to support the Board's conclusion that the variance would, in fact, impair the intent and purpose of the Exeter Zoning Ordinance and Comprehensive Plan. The stated purposes of the Zoning Ordinance are, in part, to promote "the conservation of the natural resources of the Town of Exeter. . .to lessen congestion in the streets. . .to prevent the overcrowding of land" and "to avoid undue concentration of population. . . ."Zoning Ordinance § 1.1 (Statement of Purpose). The Appellants' property is located in a RE-2 zone which requires a minimum lot size of 2 acres. The Appellants' counsel stated at hearing that the average size of the other lots in the surrounding Boone Lake area is approximately 6,000 to 7,000 square feet. The Appellants' subdivided lots would be approximately 8,500 and 10,000 square feet in area, and thus, would not likely alter the general character of the surrounding area if most lots are in fact smaller. Yet, to continue to allow the creation of such non-conforming lots in the RE-2 zone can reasonably be seen as impairing the intent and purpose of the Zoning Ordinance and Comprehensive Plan. The merger provision within the Zoning Ordinance states:
 Merger of abutting nonconforming lots. If two or more abutting nonconforming lots are held in the same ownership at any time after May 2, 1977, such lots shall be combined for the purpose of this ordinance in order to conform or more nearly conform to any of the dimensional requirements of this ordinance for the district in which the lots are located, and such lots shall not be sold separately. Zoning Ordinance § 3.5.2 (emphasis added). *Page 13 
Clearly, the purpose of the merger provision is to create more lots which conform or more nearly conform to the area requirements of the zone, specifically, 2 acres. Thus, the Court agrees with the Board's conclusion that it would impair the intent and purpose of the Zoning Ordinance and Comprehensive Plan to grant variances which would allow the Appellants to subdivide their already non-conforming lot, thereby reverting the lots into two even less conforming parcels. Further, at hearing, the Board heard testimony of Paul Piscerne of the Conservation Commission who testified as to the potentially detrimental effects that increased development along Boone Lake could create. The Board could have reasonably considered Piscerne's testimony to be persuasive evidence that the requested variances would contravene two stated purposes of Exeter's Zoning Ordinance and Comprehensive Plan, specifically, preventing overcrowding of the land and avoiding undue population density.
Finally, to reiterate the Rhode Island Supreme Court requirements as set forth in Lischio, for an applicant to obtain a dimensional variance he or she must satisfy both § 45-24-41(c) and (d)(2) which additionally requires the applicant to show that the hardship caused by the Board's refusal to grant a variance amounts to "more than a mere inconvenience." Based on the Board's conclusions that the Appellants were unable to satisfy either § 45-24-41(c)(2) (that hardship was not self created) and (3) (that the variances would not impair the intent or purpose of the Zoning Ordinance or Comprehensive Plan) this Court need not address whether the Appellants' hardship amounted to "more than a mere inconvenience," which was similarly not addressed by the Board.
 CONCLUSION
For the reasons stated above, this Court denies the Appellants' motion to dismiss and reverses the decision of the Exeter Zoning Board of Review. This Court finds that the Board's *Page 14 
denial of dimensional variances was supported by reliable, probative, and substantial evidence of the record, was not arbitrary or capricious, was not affected by error of law and did not constitute an abuse of the Board's discretion. Counsel for the Board shall submit an appropriate order in accordance with the Court's decision within ten days from issuance of this decision.
[1] The "screen house" which existed on the property had no septic or water but did have electricity. The Appellant's son testified at the hearing that the screen house was down approximately a month prior to the Appellant's application for the Lot 8 building permit. The question of the screen house arose in response to the Board's question regarding whether the Lot 8 was purchased as a buildable lot. There was extensive discussion at the hearing as to whether this structure was a taxable structure. The Board made the finding of fact that the structure was never occupied and was not taxed as an accessory dwelling, although the tax statements made part of the record do not distinguish what portion of taxes are attributable to land as opposed to structures.
[2] For a RE-2 zone, the Zoning Ordinance requires: Minimal lot size of 2 acres, minimum street frontage 200 ft; maximum lot coverage by all structures 15%; minimum front depth (setback) 60 ft; minimum side depth (set-back) 30 ft; and minimum rear depth (set back) 50 ft.
[3] The Board found that the Sicilianos do not dispute that the lots were merged.
[4] Suorsa testified that he is a professionally licensed land surveyor, Class II septic system designer and a licensed soil evaluator. He stated he has been a R.I. registered land surveyor since 1988.
[5] The Zoning Ordinance states "Sec. 3.5 Land nonconforming by area . . .3. Subdivision of merged lots. A lot which has been created by the merger of two or more nonconforming lots, may be subdivided or combined with other lots and subdivided, provided that approval is given of the planning board and provided that the following requirements are met
 A. In all zones, [in] which any portion of the lot is within the groundwater overlay protection of the district, all dimensional requirements for the zone, including without limitation area, frontage and lot width, shall be met.
 B. In the RE-2 zone, all dimensional requirements for the zone, including without limitation, area, frontage and lot width, shall be met.
 C. In all other residential zone districts all dimensional requirements for the zone, including without limitation, area, frontage and lot width, shall be met.
[6] Section 45-24-69(d) allows a Superior Court to reverse a zoning board if it is "(1) In violation of constitutional, statutory, orordinance provisions; (2) In excess of the authority granted to thezoning board of review by statute or ordinance." (emphasis added).
[7] "Section 45-24-41(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristic of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant. . .,
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3)That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based. (4) That the relief to be granted is the least relief necessary.
Section 45-24-41(d)(2) "in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. . . ."
[8] The Exeter Zoning Ordinance reflects § 45-24-41(c) nearly verbatim in § 1.3B.C.
[9] The Court in Sciacca applies the "no other reasonable alternative to enjoy a legally permitted beneficial use of one's property" standard of § 45-24-41(d)(2). The statute has since been amended by 2002 R.I. Pub. Laws 384, which removed that requirement from the "the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience," returning the standard to what has been known as the Viti standard. Despite this change in the law, there has been no amendment to § 41-24-41(c)(2), the self imposed hardship rule, and therefore the Court's reasoning and application of the rule in Sciacca remains both valid and applicable to the present case, since it has been neither amended nor overruled since the Court's decision inSciacca. *Page 1